[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM of DECISION
The parties intermarried on October 6, 1984 in Darien, Connecticut. The plaintiff has resided continuously in this state for twenty-five years. There are four children, issue of this marriage. They are Christopher, born March 28, 1985; Alexander, born May 14, 1987; Sean, born July 13, 1989 and Cassidy, born July 7, 1993. The evidence indicates the marriage has irretrievably broken down, and judgment may enter dissolving the marriage on that ground.
The plaintiff is 31 years old and in good health. She is a high school graduate who married the defendant at age 19. The plaintiff's work experience is limited because she has been occupied with raising her four children. She currently works at a part-time job and earns a modest income.
The defendant is 38 years old and despite describing some CT Page 8766 disability in his right wrist and knees complains of no health problems that interfere with his pursuing his job and any other activities. The defendant has a high school education and operates his own masonry business in a corporate form.
This was a long trial covering a period of five days. The main issues in dispute involved the causes for the breakdown of the marriage and the true income earned by the defendant.
One issue not in dispute was the father's relationship with the children. The plaintiff readily stated that the defendant was a good father, and the evidence bears out that statement. The court is convinced that the defendant is a loving parent who is concerned about his children and wants to continue playing a meaningful part in their lives. He has been generous with his time and money for the children.
The court believes that the defendant has had difficulty in accepting the plaintiff's decision to terminate this marriage resulting in inappropriate actions by the defendant and further resulting in getting the police authorities involved in the marital problems of the parties. The court expects the defendant to act maturely in the future and avoid melodramatic confrontations.
The court finds each party must bear some responsibility for the breakdown of their marriage. It appears the defendant was an unyielding task master with a strict view of what the plaintiff's duties were as a housewife and may have not been as tolerant as the plaintiff may have desired. The plaintiff appears to have been unable to adjust to the lifestyle sought by the defendant. In short, the parties were incompatible and had different priorities, and both behaved immaturely at times.
The court heard considerable evidence concerning the defendant's business operation and the income it generated. It is clear that the defendant is a talented craftsman with a flourishing business who has no interest in the bookkeeping part of his operation. The court found illuminating and helpful the evidence presented by Michael Kanter, the CPA retained by the plaintiff. Mr. Kanter analyzed the business records produced by the defendant and presented evidence as to the defendant's income.
The court has considered Mr. Kanter's testimony and the CT Page 8767 defendant's spending habits for the benefit of the family over the past year in reaching its conclusions as to the 1996 income of the defendant from his business earnings. Also, the court notes that the defendant's current financial affidavit concedes annual income of $57,000 to which must be added the personal medical insurance and auto insurance payments made by the defendants' business and not included in his stated income.
The court finds that based on the defendant's earnings for the first eight months of 1996, as adjusted for unpaid withholding taxes and social security taxes, the defendant has earned $47,000 through August 20, 1996 and annualized the 1996 income will be $70,500.
The court has carefully considered the criteria set forth in Connecticut General Statutes Sections 46b-62, 46b-81, 46b-82 and46b-84 in reaching the decisions reflected in the orders that follow.
The following orders may enter.
(1) The parties agree and the court orders that the parties shall have joint legal custody of the minor children with physical custody awarded to the plaintiff. The defendant shall have reasonable and liberal rights of visitation which shall include the following schedule:
a. The defendant shall have visitation every other weekend from 5 p.m. on Friday to 7 p.m. on Sunday. He will give the children dinner before returning them to the plaintiff.
b. The defendant shall have visitation every Tuesday evening from 4:30 p.m. to 7:30 p.m. He will give the children dinner before returning them to the plaintiff. He will encourage and assist the three school age children to complete their homework during midweek visitations.
c. The defendant will have two full, continuous weeks of visitation with the minor children during the last two weeks of August each year. Provided, however, that such visitation shall end at least three full days prior to the commencement of the children's schools. If school commences prior to the end of August, then the defendant's two weeks visitation period shall commence earlier to provide for a full two weeks with the children. CT Page 8768
d. The parents shall alternate legal holidays. A legal holiday shall be defined as a weekday when school or camp is in session but it is suspended to observe a holiday.
e. The defendant shall have visitation on Father's Day. The plaintiff shall have the children on Mother's Day.
f. The parties shall share the birthday of each child.
g. The parties shall alternate the winter school break and the spring school break. If school vacations are combined so that there is only one winter-spring break, then the parties shall alternate years with the children during that break.
h. The parties shall alternate Thanksgivings.
i. Each party shall have the children for one-half of the Christmas-New Year break. The parties shall alternate first and second halves of the Christmas-New Year break in alternate years.
j. The parties shall divide the Christmas holiday as follows:
1. Christmas Eve 4 p.m. to 11 p.m.;
2. Christmas Eve at 11 p.m. to Christmas Day at 5 p.m.
The division shall be alternated in alternate years.
k. The defendant shall have visitation on New Year's Eve until 9 a.m. on New Year's Day. The children shall be with the plaintiff on New Year's Day. This division shall be alternated in alternate years.
l. Each party shall inform the other of the location, itinerary and phone number where the children can be reached when on vacation with the other parent.
m. Each parent shall have the right to telephone the children once per day, between 7 a.m. and 8 p.m., when they are with the other parent.
n. The children's personal property shall be returned to their primary residence when the children are returned from visitation. CT Page 8769
o. Each parent will endeavor to foster a respectful and loving relationship between the children and the other parent. Neither parent will denigrate the other in the presence of the children.
p. The plaintiff shall have a continuous two week vacation with the children during the summer break from school. She shall give the defendant 14 days' notice of the dates of the vacation, which shall not be in conflict with the defendant's vacation with the children set forth in c above.
q. If the plaintiff wishes to move outside the state of Connecticut with the children, she shall give the defendant ninety days written notice of such intention.
As the children get older, the visitation schedule should be reviewed and adjusted either by agreement or by the court upon request.
(2) The following support order is based on the court's finding that the defendant's annual income is $70,000 and the plaintiff's income is $15,000.
The defendant shall pay to the plaintiff as periodic unallocated alimony and child support the sum of thirty thousand ($30,000) dollars per year. The payments shall be made monthly in two equal amounts of twelve hundred and fifty ($1,250) dollars. They shall be made on the first and fifteenth day of each month, in advance. The first installment shall be made on November 1, 1996 and the second on November 15, 1996 and continue on the first and fifteenth day of each month thereafter, until the death of either party, the plaintiff's remarriage or November 1, 2006, whichever event first occurs.
As each child reaches majority, this order may be reviewed, upon request, and modified, if appropriate. If the plaintiff remarries during the minority years of any of the children, an appropriate child support order shall be entered, after a hearing thereon, effective the day after the plaintiff's remarriage.
The court notes that an analysis of this support order will reveal that, after the defendant considers the tax advantage to him of the unallocated order, his net payments will not exceed the spending level he has maintained over the last year for the CT Page 8770 benefit of the plaintiff and the children. The only difference will be that the plaintiff, who has physical custody of the children, will make the decisions on how the funds are spent instead of the defendant having that responsibility.
The child support guidelines provide that based on the income of the parties as found by the court that the defendant's obligation would be $363 per week ($1,560 per month). The support order entered herein deviates from the guidelines. The court finds the deviation to be appropriate because the coordination of total family support does not result in a lesser economic benefit to the children. In fact, tax planning considerations make the order more advantageous for the entire family.
The current pendent lite order shall remain in effect for the month of October, 1996.
A contingent wage withholding order may enter.
The plaintiff may claim the four minor children as exemptions for Federal and State income tax purposes.
(3) The defendant shall designate his minor children as beneficiaries of life insurance in the minimum amount of fifty six thousand ($56,000) dollars as long as he is obligated to pay child support and the defendant shall not encumber the life insurance during that period. The defendant shall execute and deliver to the plaintiff an authorization directed to the life insurance company, Chubb, to enable the plaintiff to obtain information as to the status of the policy.
(4) The defendant shall provide medical and dental insurance for the benefit of the minor children. The defendant shall be responsible for all unreimbursed or uncovered medical bills for as long as the deductible exceeds five hundred ($500) dollars. If the defendant obtains a policy with a deductible of five hundred ($500) dollars or less, then the parties shall share equally any unreimbursed or uncovered medical bills. An order, pursuant to Connecticut General Statutes section 46b-84 (d) shall enter. In addition, the defendant shall permit the plaintiff to convert coverage under said policy for her benefit under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) for the statutory period at the plaintiff's sole expense.
(5) The parties agree and the court orders that the marital CT Page 8771 residence located at 250 West Avenue in Darien, Connecticut, be sold. Until the sale, the plaintiff and the children shall have exclusive possession of the premises.
The parties agree and the court orders that the plaintiff may attempt to sell the residence without a broker at a listing price of three hundred forty thousand ($340,000) dollars until November 1, 1996. Thereafter the property shall be listed for sale through a broker agreed upon by the parties. The court reserves jurisdiction over any issue arising concerning the sale, which the parties can not resolve by agreement.
The proceeds of the sale shall be disbursed as follows:
a. Payment of closing fees, costs and broker's commission;
b. Payment of all real estate taxes due;
c. Payment of all the presently existing liens recorded against the premises, the total being approximately two hundred thirty thousand ($230,000) dollars;
d. Payment of the outstanding bill due the Stamford Hospital in the amount of eight hundred fifty ($850) dollars;
e. The balance of the proceeds shall be equally divided between the parties.
(6) Each party shall be responsible for the payment of fifty (50%) percent of any capital gains tax liability resulting from the sale of the residence.
(7) The defendant shall arrange for the transfer of the title to the 1986 Mercedes Benz automobile to the plaintiff.
(8) The plaintiff is awarded all the furniture and furnishings located in the marital residence with the exception of the following items which are awarded to the defendant; his post office box key; his metal box with contents; the cable box converter — view star MXC 2020; his jewelry, including a watch; the coin and stamp collections; pellet air rifle; soda bottle and cans collection; boat; all tools and materials located in the house, garage, sheds, and yard; book and personal items under stairs; attic and garage; desk in garage; file cabinets; bed or two antique cabinets in bedroom at plaintiff's option; home CT Page 8772 videos and photos to be copied at defendant's expense and originals returned to plaintiff. The plaintiff shall supply the defendant proof of the destruction of the following guns: 38 pistol, 22 pistol and 22 rifle with all the ammunition located in the residence.
The defendant shall arrange to remove these items from the residence, with prior notice to the plaintiff, by November 1, 1996.
(9) The defendant is awarded his entire interest in the corporation Cas-C, Inc.; his personal bank accounts; his miscellaneous securities and his IRA.
(10) The defendant shall be solely responsible for the payment of the credit card debts listed on his financial affidavit and any debts he owes his parents for any payments made to or in behalf of the defendant and or plaintiff during their marriage, with the exception of the mortgage debt due the defendant's father. In particular, the defendant shall be solely responsible for the repayment of the funds his father advanced for the purchase of the materials used to enlarge the marital residence.
(11) The defendant shall be solely responsible-for the payment of any federal or state income taxes due for the years the parties filed joint tax returns, except for the payment of the liens presently existing in the land records, and shall indemnify and hold harmless the plaintiff from any liability thereon.
(12) At the commencement of trial, the court conducted a hearing on the plaintiff's motion for fees based on the claimed noncompliance by the defendant in not furnishing information previously requested by the plaintiff. (Motion #145). After reviewing the evidence, the court finds that the defendant did fail to comply with furnishing all the material requested and what was supplied was not furnished in a timely manner. However, the plaintiff's request for fees is denied as the court took the additional fee expense caused the plaintiff into consideration in dealing with the plaintiff' request for fees in reference to the entire case.
(13) The defendant shall contribute toward the plaintiff's attorney's fees the sum of fifteen thousand ($15,000) dollars. The court finds that a total denial of the plaintiff's claim for counsel fees would unduly impair and undermine the other CT Page 8773 financial orders entered. The payment shall be made from the defendant's share of the proceeds from the sale of the marital residence. If there is insufficient funds to make the total payment, any balance due shall be paid within ninety days thereafter.
(14) The defendant shall pay the plaintiff the sum of three thousand ($3,000) dollars as a contribution for the balance due the plaintiff's expert, Michael Kanter. This payment shall be due at the same time or times the defendant's contribution to attorney's fees is due.
(15) The plaintiff's maiden name of Clarke is ordered restored.
Judgment may enter accordingly.
NOVACK, J.